# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF IDAHO

_____

In Re:

Jon D. Cowan,

                    **Debtor.**

        **Bankruptcy Case
No. 08-02083-JDP**

_____

## MEMORANDUM OF DECISION
_____

Appearances:

> Matthew Christensen, Angstman Johnson, PPLC, Boise, Idaho,
> Attorney for Debtor Jon Cowan,

> Jeffery Kaufman, LAW OFFICE OF D. BLAIR CLARK, PC, Boise,
> Idaho, Attorney for Pine Business Center.

### *Introduction*

On October 25, 2017, chapter 7 debtor Jon Dana Cowan ("Debtor"),

filed a motion seeking an award of damages and sanctions against Pine

Business Center, LLC ("Lessor") for violating the discharge injunction.

Dkt. No. 21.  Lessor objected to the motion.  Dkt. No. 29.  On February 13,

MEMORANDUM OF DECISION – 1

2018, the parties presented evidence, testimony, and closing arguments at

a hearing.  Dkt. No. 36.  At the conclusion of the hearing, the Court took

the motion under advisement.  Having considered the evidence and

arguments, as well as the applicable law, this Memorandum sets forth the

Court's findings, conclusions and reasons for its disposition of the motion.

Rules 7052; 9014.

### Facts

In November 2006, Debtor and a business partner entered into a

lease agreement with Janice Pecoraro ("Pecoraro"), a representative of

Lessor, regarding the commercial property at which they would operate

their business ("the Lease").  Ex. 200.  The Lease term commenced

December 1, 2006 and was to end on December 31, 2009.  *Id.* at 1.  Lease

payments were initially $880 per month, but were to gradually increase to

approximately $940 per month by December 2008.  *Id.*

During the lease term, in September 2008, Debtor filed a chapter 7

petition.  Ex. 203.  The payments under the Lease were current at that time.

While Debtor testified he gave his bankruptcy attorney information

MEMORANDUM OF DECISION – 2

regarding the Lease, it was not disclosed as an unexpired lease and Lessor

was not listed as a creditor in Debtor's schedules.  Ex. 204 at 24.  As a

result, the "Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors, &

Deadlines" for Debtor's case was not sent to Lessor by the clerk.  Ex. 205 at

3.  Debtor testified without contradiction, however, that he personally

informed Pecoraro about his bankruptcy case shortly after filing his

petition.  On December 29, 2008, a discharge was entered, and the

bankruptcy case was closed the same day.  Dkt. No. 17.

Debtor and his partner continued to do business at the leased

premises both during and after the bankruptcy case.  Sometime in January

2009, Debtor attempted to negotiate with Pecoraro concerning the amount

of the lease payments.  Debtor testified that "with the economy", he and

his partner felt they could not afford to make the monthly payments which

had by then increased to approximately $940.  Debtor offered to enter into

a new lease, but Pecoraro told him that would not be necessary because

the parties could rely on the existing Lease and just change the amount of

MEMORANDUM OF DECISION – 3

the lease payments.[1]

On January 20, 2009, Debtor, his partner, and Pecoraro executed a document entitled "First Amendment to Lease Agreement" ("the Amendment"). Ex. 201. The Amendment provided that the "Landlord and Tenant desire to amend the original lease on the terms and conditions set forward in this lease amending agreement"; that the parties agreed to "amend and extend the original lease term" to commence on December 1, 2008, and to expire on June 30, 2011, an 18-month extension on the original term of the Lease; and that "[i]n exchange for the extended lease term," Lessor would forego the payment increase specified under the original Lease, meaning the payment would revert to, and continue for the duration of the Lease, at the previous rate of $910 per month. *Id.*

Importantly, the Amendment provided that "[e]xcept as set forth in this First Amendment, *all of the terms and provisions of the Lease shall remain*

---

[1] It is unclear whether the lease payments were delinquent at that time. Debtor testified that he and his partner may have not made the December payment, but during cross-examination, he ultimately admitted that he did not know.

MEMORANDUM OF DECISION – 4

*unmodified and in full force and effect*." Ex. 201 at 2 (emphasis added). The

Amendment also specified that "[t]his agreement, *together with the lease*,

constitutes the final, complete and exclusive statement of the agreement

between the parties pertaining to their subject matter and supersedes any

and all prior and contemporaneous understandings or agreements of the

parties." Ex. 201 at 1 (emphasis added).

In about June 2009, Debtor's partner left their business. Debtor

testified that he could not make the rent payments on his own and vacated

the premises within a month after his partner's departure.[2]

On October 28, 2009, Lessor filed a state court action against Debtor

and his partner alleging in the complaint that they had breached "the

Lease Documents," a reference to both the Lease and the Amendment, and

that the "'First Amendment to Lease Agreement' [] varied and altered the

terms of the original 'Lease Agreement.'" Copies of both the Lease and

Amendment were attached as exhibits to the complaint and their terms

---

[2] Debtor did not testify about whether the lease payments were
delinquent at the time he vacated the premises.

MEMORANDUM OF DECISION – 5

incorporated by reference.  Ex. 100 at 3, 7.  Lessor sought a money

judgment against Debtor and his partner for (1) $1,363.90 for unpaid rent

at the time Debtor vacated; (2) $6,717.33 for lost rental income incurred by

Lessor prior to finding a new tenant; (3) $1,224.71 for costs and damages

incurred by Lessor for Debtor's and his partner's failure to leave the

premises clean and free of any defects; and (4) reasonable attorney fees

incurred in the action.  Ex. 100 at 3–5.

Debtor and his partner attempted to represent themselves in the

litigation.  Debtor testified that, to do so, he drafted and filed a "Pretrial

Memorandum" with the state court.  *See* Ex. 101.[3]  In the memorandum,

Debtor explained that he had filed a bankruptcy petition in the fall of 2008

and received a discharge in December 2008.  *Id.* at 2.

On February 12, 2010, the state court entered a money judgment

against Debtor and his partner for $9,429.99.  Ex. 102.  The parties did not

---

[3]  The copy of the memorandum in the record does not indicate when, or
if, it was filed with the state court.  Debtor testified that he obtained the copy of
the memorandum admitted in evidence from Lessor's attorney in connection
with other pleadings filed in the action.

MEMORANDUM OF DECISION – 6

submit a copy of the judgment in evidence, and the Court is therefore

unable to determine how the amount of the money judgment was

calculated by the state court.  However, Debtor testified that, as he

understood its decision, the state court did not make a determination

concerning whether his debt to Lessor under the Lease had been

discharged during his bankruptcy case.

On March 18, 2010, the state court amended the judgment amount to

$12,249.00 to add amounts claimed in a memorandum of court costs and

attorney's fees filed by Lessor's attorney.  Ex. 102.  The docket from the

state court action indicates that after the amended judgment was entered

Lessor took repeated and frequent actions to collect the judgment from

Debtor through garnishment and issuance of sheriff's writs.  *See* Ex. 202.

Debtor testified that, at some point, he filed a motion to set aside the

judgment in the state court action, arguing that the judgment was void

because of his bankruptcy discharge.  The state court denied the motion

MEMORANDUM OF DECISION – 7

because, according to Debtor, the bankruptcy case "was too old."[4]  Debtor

testified that, as things now stand, the judgment in Lessor's favor is still

active, is unsatisfied, and that he has incurred attorney's fees and costs in

attempting to dispute the validity of the judgment both in state court and

this Court.

On October 25, 2017, Debtor filed a motion to reopen the bankruptcy

case, together with a Motion for Sanctions for Violation of the Discharge

Injunction.  Ex 203 at 3; Dkt. Nos. 20, 21.  The Court granted the motion to

reopen Debtor's case on October 31, 2017.  Dkt. No. 23  Lessor objected to

Debtor's sanctions motion, denying it had violated the discharge.  Dkt. No.

29.

### *Analysis and Disposition*

The issues raised by the parties in this Court focuses on whether

Lessor violated the discharge order entered in Debtor's bankruptcy case by

---

[4]  The parties did not provide the Court with copies of the order filed in
the state court action, nor the transcript from the hearing on the motion to set
aside the judgment.  While, in his brief, Debtor, through counsel, argues that the
motion  was denied because it was untimely, nothing in the record supports that
assertion.

MEMORANDUM OF DECISION – 8

suing him in state court and attempting to enforce and collect the resulting money judgment.

Subject to exceptions not relevant here, the Code directs that, in a chapter 7 case, an individual debtor shall be granted a discharge from all debts that arose before the date of the filing of the petition, whether or not a proof of claim based on any such debt is filed, and whether or not a claim based on such debt is allowed in the bankruptcy case. §§ 727(a); (b). The discharge order constitutes an "injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any [discharged] debt as a personal liability of the debtor[.]" § 524(a)(2). A party who willfully violates the discharge injunction can be held in contempt and sanctioned under § 105(a). *Emmert v. Taggart (In re Taggart)*, 548 B.R. 275, 286 (9th Cir. BAP 2016), *argued*, No. 16-60043, (9th Cir. Oct. 3, 2017*); Renwick v. Bennett (In re Bennett)*, 298 F.3d 1059, 1069 (9th Cir. 2002). If a creditor commences an action and obtains a judgment that is a determination of a debtor's personal liability for a discharged debt, that judgment is void. § 524(a)(1).

MEMORANDUM OF DECISION – 9

Relying on these Code provisions, Debtor alleges that Lessor should be sanctioned for prosecuting the state court action to collect Debtor's discharged debt to Lessor under the Lease, and that Lessor's state court judgment against him is void.

Lessor acknowledges that any claim held by Lessor arising under the Lease was discharged.[5]  Therefore, any attempt by Lessor to enforce Debtor's obligations under the Lease would violate the discharge injunction, and any judgment obtained to do so is void.  Lessor also concedes that the Lease obligations were discharged in Debtor's no-asset bankruptcy case even though Lessor was not listed as a creditor in Debtor's schedules.  *See In re Venegas*, 257 B.R. 41, 46–47 (Bankr. D. Idaho

---

[5]  Lessor spends considerable time in argument discussing the status of the lease in relation to the bankruptcy case as a "rejected" lease.  *See* § 365(a) (authorizing a trustee to  assume an unexpired a lease); § 365(d)(4)(A) (providing that unexpired lease of nonresidential real property is "deemed rejected" if not assumed by the trustee within 120 days of the petition date); § 365(g)(1) (providing that rejection of an unexpired lease constitutes a breach of such lease "immediately before the date of the filing of the petition").  However, that the lease was deemed rejected in the bankruptcy case is of no consequence when considering Debtor's continuing liability for obligations under the Lease under these circumstances.  Simply put, Debtor's liability for any such obligations was discharged.

MEMORANDUM OF DECISION – 10

2001) (citing *Beezley v. California Land Title Co. (In re Beezley*, 994 F.2d 1433

(9th Cir. 1992)) (holding that debts owed to creditors in no-asset chapter 7

cases are discharged even when not listed in a debtor's schedules).

Despite these concessions, Lessor argues it should not be sanctioned

for violating the discharge because, under the facts, when it sued Debtor in

state court, it was not attempting to collect on Debtor's discharged Lease

debt, but was solely seeking to enforce his new, post-bankruptcy liabilities

arising under the Amendment.  For the same reason, Lessor argues that its

state court judgment against Debtor is not void.  In the Court's view,

however, Lessor's attempts to draw such surgical legal distinctions under

these facts miss the mark.

## A.    The Amendment

Lessor argues that the Amendment created new, undischarged,

postpetition obligations for Debtor.  Debtor disagrees, arguing the

Amendment was not a new lease, but was merely an ineffective attempt to

revive the already discharged Lease obligations.  On these facts, the Court

agrees with Debtor.

MEMORANDUM OF DECISION – 11

An "agreement between a holder of a claim and the debtor, the consideration for which, in whole *or in part*, is based on a debt that is dischargeable" amounts to an unenforceable reaffirmation agreement, unless the parties first comply with the requirements for such agreements under the Code.  § 524(c) (emphasis added).  Sections 524(c) and (d) provide specific prerequisites to enforceability of a discharged obligations. *In re Bennett*, 298 F.3d at 1066.  "The reaffirmation rules are intended to protect debtors from compromising their fresh start by making unwise agreements to repay dischargeable debts . . . ."  *Republic Bank of Cal. v. Getzoff (In re Getzoff),* 180 B.R. 572, 574 (9th Cir. BAP 1995).  These Code provisions were enacted by Congress to deal with a common problem, indeed, the very mischief present under these facts: "Post-bankruptcy attempts to enforce pre-bankruptcy obligations in nonbankruptcy courts using non-bankruptcy law."  *In re Bennett*, 398 F.3d at 1066 (citing *In re Oliver*, 99 B.R. 73, 76 (Bankr W.D. Okla. 1989)).

When bankruptcy intervenes, state courts must recognize "that state law no longer exclusively governs agreements to revive discharged debts."

MEMORANDUM OF DECISION – 12

*Id.* Instead, "a reaffirmation agreement is only enforceable to the extent it (1) is enforceable under applicable nonbankruptcy law and (2) meets the requirements of § 542(c)." *Id.* (citing § 524(c); *Mandrel v. Ford Motor Credit Co. (In re Mandrell)*, 50 B.R. 593, 595 (Bankr. M.D. Tenn. 1985)). Sections 524 (c) and (d) "have been applied strictly by the courts to carry out their remedial purposes and to ensure that they are not evaded by agreements which, though not labeled as reaffirmations, have the effect of waiving the protections of the discharge." 4 COLLIER ON BANKRUPTCY ¶ 524.04 n. 3 (Richard Levin & Henry J. Sommer eds., 16th ed. 2017) (citing *In re Bennett*, 298 F.3d 1059; *In re Getzoff*, 180 B.R. 572).

As shown by the facts here, the Amendment was, in legal effect, a reaffirmation agreement. Without a doubt, through it, Lessor attempted to revive a variety of Debtor's discharged obligations under the Lease. In particular, the title to the document executed by the parties is "First Amendment to Original Lease." Ex. 201. The Amendment made clear that the parties agreed to two new terms, and that "*together with the lease*", the Amendment constituted the parties' agreement. Ex. 201 at 1 (emphasis

MEMORANDUM OF DECISION – 13

added).  And the Amendment expressly provided that "*all of the terms and provisions of the Lease shall remain unmodified and in full force and effect*."  Ex. 201 at 2 (emphasis added).  Moreover, a material part of the consideration offered by Lessor to Debtor was its promise to "forego [collection under] the original agreement [of the rent increase] in exchange for the extended lease term."  However, Debtor's obligation to pay that rent to Lessor was discharged.

Lessor argues that Debtor, not Lessor, benefitted from its willingness to enter into the Amendment.  But, for present purposes, it does not matter whether Debtor benefitted from Lessor's attempt to revive the terms of the Lease because even if a new agreement provides new consideration to the debtor, it is inconsequential to the legal effect of the agreement if any part of the deal results in revival of discharged obligations.  *In re Bennett*, 298 F.3d at 1067 (citing *In re Getzoff*, 180 B.R. at 574).

In sum, under these facts, the Court concludes that the Amendment was an unenforceable reaffirmation agreement that could not revive

MEMORANDUM OF DECISION – 14

Debtor's obligations under the Lease because Lessor failed to comply with

the requirements of § 524(c) and (d).[6]

## B.    Violation of the Discharge Injunction

"[U]nder section 524(a)(2), a discharge of the debt operates as an

injunction against commencement of an action to collect on the debt as a

personal liability of the debtor." *In re Bennett*, 298 F.3d at 1066–67.  Lessor

acknowledges that Debtor's obligations under the Lease were discharged,

and the Court has concluded the Amendment failed to revive those

obligations because Lessor failed to satisfy the requirements of § 524(c).

Thus, any act to enforce Debtor's obligations under the Lease or the

Amendment violated the discharge.

Here, Lessor commenced, prosecuted, and obtained a judgment

against Debtor in the state court action.  Lessor's complaint in that action

---

[6] The Amendment failed to satisfy the requirements of § 524(c) in a number of ways: it was not made before the granting of the discharge and it was not filed with the Court. *See* § 524(c)(1) and (3).  Importantly, § 524(c) also requires that when a debtor enters into a reaffirmation agreement when not represented by an attorney, the bankruptcy court must approve the agreement. This also did not occur in this case.

MEMORANDUM OF DECISION – 15

sought damages for the alleged breaches by Debtor of "the lease documents," which the complaint defined to include the both the Lease and the Amendment.  Under § 524(a)(2), Lessor's legal action against Debtor was a violation of the discharge injunction, and under § 524(a)(1), the state court judgment was void.  Consequently, the actions taken by Lessor described in the state court's docket to enforce the judgment also each violated the discharge injunction.

## C.    Sanctions

A party who willfully violates the discharge injunction can be held in contempt and sanctioned under § 105(a).  *In re Taggart*, 548 B.R. at 286. To obtain monetary sanctions for violating the discharge injunction, the debtor must prove, by clear and convincing evidence, "that the creditor (1) knew the discharge injunction was applicable [to the actions] and (2) intended the actions which violated the injunction."  *In re Bennett*, 298 F.3d. at 1069.  If proven, the burden then shifts to the offending creditor to demonstrate why it was not able to comply with the discharge order.  *Id.* at 1069.

MEMORANDUM OF DECISION – 16

The "actual knowledge" requirement of the first prong is governed by a strict standard that requires "evidence showing the alleged contemnor was aware of the discharge injunction *and* aware that it applied to his or her claim." *In re Davies*, 577 B.R. 352, 361 (Bankr. D. Idaho 2017) (quoting *In re Taggart*, 548 B.R. at 286) (emphasis in original). "Whether a party is aware that the discharge injunction is applicable to his or her claim is a fact based inquiry which *implicates a party's subjective belief, even an unreasonable one*." *Id.* (quoting *In re Taggart*, 548 B.R. at 286) (emphasis in original).[7] As for the second prong, a willful violation does not require a specific intent to violate the discharge injunction, but merely requires that the actions that violated the injunction were intentional. *In re Taggart*, 548 B.R. at 287–88.

Here, Lessor's representative, Pecoraro was informed about

---

[7] *But see In re Taggart*, 548 B.R. at 288 ("Of course, subjective self-serving testimony may not be enough to rebut actual knowledge when the undisputed facts show otherwise.") (citing *Chionis v. Starkus (In re Chionis)*, BAP No. CC-12-1501-KuBaPa, 2013 WL 6840485, at *8 (9th Cir. BAP Dec. 27, 2013) (citing *In re Zilog, Inc.*, 250 F.3d 996 (9th Cir. 2006))); *In re Dickerson*, 510 B.R. 289, 302–03 (Bankr. D. Idaho 2014).

MEMORANDUM OF DECISION – 17

Debtor's bankruptcy filing shortly after he filed his petition.  However,

Pecoraro's actions in negotiating and executing the Amendment are not

the focus of Debtor's sanction request.  Instead, Debtor targets Lessor's

legal action taken against him after he vacated the leased premises.  By

that time, Lessor was represented by counsel, and Debtor's undisputed

testimony is that, in his Pretrial Memorandum in the state court action, he

specifically disclosed that he had filed for bankruptcy and received a

discharge which precluded enforcement of Debtor's obligations under the

Lease.  Despite the knowledge imparted by this filing,[8] Lessor, through its

lawyers, pressed ahead to obtain, and to enforce, the state court judgment

against Debtor.[9]  In short, the evidence shows, clearly and convincingly,

_____

[8] The Court comfortably infers that Lessor's attorney received a copy of the memorandum during the course of the state court litigation based upon Debtor's undisputed testimony that the copy of the memorandum given to this Court was actually obtained when it was attached to Lessor's counsel's request for an award of fees in the state court action, which request included counsel's time spent reviewing that memorandum.

[9] See In re Jones, 389 B.R. 146, 161 (Bankr. D. Mont. 2008) (quoting Stallcop v. Kaiser Found. Hosps., 820 F.2d 1044, 1050 (9th Cir. 1987)) (noting that "a person who has consulted with an attorney 'can be charged with constructive knowledge of the law's requirements.'")

MEMORANDUM OF DECISION – 18

that Lessor, through its attorneys, was subjectively aware of the existence

of Debtor's bankruptcy and the discharge injunction.  Despite this

knowledge, Lessor's attorneys sought to enforce the Lease and the

Amendment in state court in violation of the discharge injunction.

There can also be no dispute that Lessor intended to prosecute the

state court action against Debtor to collect damages for breaches, not just

of the Amendment, but of the "lease documents" as well.  In addition, as

discussed below, the tainted efforts by Lessor's attorneys motivated the

state court to enter a void judgment.

The Ninth Circuit instructs, "[i]f the bankruptcy court finds that the

creditor [ ] willfully violated the injunction, it shall, at the very least,

impose sanctions to the extent necessary to make [the debtor] whole."

*Espinosa v. U.S. Aid Funds, Inc.*, 553 F.3d 1193, 1205 n. 7 (9th Cir. 2008).

Indeed, "compensatory civil contempt allows an aggrieved debtor to

obtain compensatory damages, attorneys fees, and the offending creditor's

compliance with the discharge injunction."  *Walls v. Wells Fargo Bank, N.A.*,

276 F.3d 502, 507 (9th Cir. 2002).   Bankruptcy court's have broad

MEMORANDUM OF DECISION – 19

discretion in fashioning a remedy for proven violations of the discharge injunction. *In re Mooney*, 532 B.R. 313, 327 (Bankr. D. Idaho 2015) (citing *Bassett v. Am. Gen. Fin. Co. (In re Bassett)*, 255 B.R. 747, 747–58 (9th Cir. BAP 2000), *aff'd in part, rev'd in part on other grounds*, 285 F.3d 882 (9th Cir. 2002)).

Here, to compensate him for the discharge violations, the Court concludes that Debtor should be able to recover the attorneys fees and costs incurred in obtaining Lessor's compliance with the discharge injunction in this Court, including those charges for reopening Debtor's bankruptcy case, and filing and litigating this motion.

Debtor's counsel also requested an award of compensatory fees and costs for litigating in state court about the judgment, but the Court declines to grant that relief. First, the Court was given little information about precisely what actions Debtor's counsel undertook in state court, or why they were taken. Second, and more important, the Court fails to understand Debtor's lawyer's decision to dispute the validity of the collection action in state court, as opposed to bankruptcy court. Because of

MEMORANDUM OF DECISION – 20

these questions about Debtor's strategy, the Court declines to compensate him for his decision to litigate in state court.[10]

Section 524(a)(1) also provides that a discharge "voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged[.]"  Here, because neither copies of the judgment, nor the decision of the state court denying Debtor's motion to set that judgment aside, were introduced in the record, the Court cannot determine exactly how the state court calculated the amount of the money judgment.  However, the complaint provides that the entirety of the relief sought was based on breaches of the "lease documents," which included the Lease and the Amendment.  Because of this, the Court concludes the judgment is void pursuant to § 524(a)(1).[11]

---

[10]  In deciding the appropriate amount of attorney's fees to award as a sanction for a discharge violation, the Court must determine "what portion of those costs was reasonable as opposed to costs that could have been mitigated." *In re Roman*, 283 B.R. 1, 12 (9th Cir. BAP 2002).

[11]  Lessor argued that it was entitled to recover damages because Debtor did not immediately surrender the leased premises to Lessor, based upon

MEMORANDUM OF DECISION – 21

*Conclusion*

Lessor's state court judgment against Debtor is void.  Lessor violated the discharge injunction when it commenced and prosecuted the state court action, and obtained a judgment, to enforce Debtor's obligations under the "lease documents", *i.e.*, the Lease and the Amendment.

Debtor is entitled to recover compensatory contempt sanctions under § 105(a) from Lessor for the reasonable attorneys fees and costs he incurred to enforce the discharge in this Court.  Within fourteen (14) days Debtor's counsel shall submit an affidavit detailing such fees and costs; Lessor may object to the amount claimed within seven (7) days; Debtor may respond to any objection within seven (7) days.  Thereafter, a separate order will be entered.

---

§ 365(d)(4)(A).  That provision, dealing with nonresidential real property leases, requires the *trustee*, not the chapter 7 debtor, to immediately surrender the leased premises to the lessor when a lease is deemed rejected.  While a lessor may assert a claim against the bankruptcy estate for holdover rent when a trustee does not timely surrender the premises, this Code provision does not grant Lessor a remedy against Debtor under these facts.  Here, any rights Lessor sought to enforce in state court were grounded in the "lease documents", not in the Code.

MEMORANDUM OF DECISION – 22

Dated:  March 14, 2018

_____
Honorable Jim D. Pappas
United States Bankruptcy Judge